**GRAGG FARMS AND NURSERY**

v.

**KELLY GREEN LANDSCAPING.**

Hamilton County Municipal Court.

No. 95–CV–27270.

Decided June 17, 1996.

*Denicola & Co., L.P.A., Jonathan Rosenstein* and *Ronald J. Denicola,* for plaintiff.

*Lindhorst & Dreidame Co., L.P.A.,* and *Gary F. Franke,* for defendant.

DAVID C. STOCKDALE, Judge.

This matter came on for trial to the court on the complaint of Gragg Farms and Nursery for payment for trees that were shipped to defendant Kelly Green Landscaping, and on the counterclaim of defendant for damages resulting from an alleged failure of the trees to conform to the requirements of the contract.

### Findings of Fact

In March 1995, the defendant placed an order through Thomas Goodman, a sales representative of the plaintiff, for a quantity of live trees of various specifications. They were to be used in landscaping properties of the Cincinnati Metropolitan Housing Authority ("CMHA"). The plaintiff issued its invoice to the defendant on March 28, 1995, for $12,345. The terms of the sale were that the trees were to be shipped by plaintiff C.O.D. The first shipment consisted of "35 '3' cal. Willow Oak" at $70 each and "11 8' Japanese Black Pine" at $31 each, balled and burlapped, for a total of $2,791. These trees were shipped C.O.D. on April 3, 1995 from plaintiff's farm in North Carolina, via a contract carrier, and arrived at defendant's holding yard in Cincinnati on April 4, 1995.

The defendant paid $850 in freight charges to the carrier, but did not give the carrier payment for the invoice for the trees on the grounds that no one at the delivery site was authorized to issue such payment. Nevertheless, the plaintiff advised the carrier to permit the defendant to take possession of the trees. Joey Gragg, the owner of Gragg Farms, testified that the trees had come straight out of the ground the day they were shipped and they were not dry. However, the preponderance of the evidence is that the willow oak trees that were delivered were not healthy and were in poor condition. They were extremely dry, the balls were loose, almost sandy, and the trees were loose in their balls.

The trees were unloaded from the truck and were immediately "heeled-in," *i.e.,* they were placed in trenches, the balls were covered with sawdust, and they were then watered. The following day, Bernard Clark, owner of Kelly Green Land-scaping, inspected the shipment at the holding yard, called the plaintiff's agent,

Thomas Goodman, and told him that the willow oaks were "junk" and that he did not want them.

Later in April, Joey Gragg contacted Bernard Clark to insist on payment. He was also told by Clark that the trees were junk and that defendant would not pay for them. Clark asked the plaintiff several times to pick up the trees, but the plaintiff made no arrangements to do so and gave no instructions to the defendant as to what he wanted done with the trees. Nevertheless, the defendant continued to water the trees every other day.

Several weeks after the trees had been heeled-in, the defendant planted five of the willow oaks on CMHA property. Two died without developing leaves and three that had begun to develop leaves wilted and died after one month. The other willow oaks in the defendant's yard died without ever producing any leaves.

The plaintiff refused to ship the balance of the order because the defendant refused to pay for the first shipment. Consequently, the defendant procured trees elsewhere to meet the obligations of its contract with CMHA. In the fall of 1995, the defendant cut the dead willow oaks at the base of their trunks, chipped the wood for sawdust and transported the balls to a landfill.

## Conclusions of Law

■ The plaintiff argues that the defendant accepted the trees by paying for the freight, that there was no effective revocation of that acceptance, and that the defendant is therefore bound to pay for the shipment. Payment for goods after an opportunity for inspection usually constitutes acceptance. See R.C. 1302.64 (UCC 2–606). However, R.C. 1302.56(B) (UCC 2–512[2]) provides that, where the contract requires payment before inspection, payment does not constitute acceptance of the goods. R.C. 1302.57 (UCC 2–513) provides in subsection (C) that "[u]nless otherwise agreed * * * the buyer is not entitled to inspect the goods before payment of the price when the contract provides:

"(1) for delivery 'C.O.D.' or on other like terms[.]"

In this case, one of the terms of the contract was C.O.D. Thus, the defendant was bound to pay before he could inspect the trees. As a result, his payment of the freight did not constitute acceptance of the shipment.

■ R.C. 1302.61 (UCC 2–602) provides that a rejection of goods must be within a reasonable time after their delivery and is ineffective unless the buyer seasonably notifies the seller of the rejection. Clark's call to Goodman on the next business day after delivery, stating that the willow oak trees were junk and that he would not pay for them, was a seasonable and effective rejection of the willow oak trees. Therefore, the defendant is not liable for payment of those trees. On the other hand, nothing was communicated to the plaintiff regarding

the Japanese Black Pine trees. Clark's failure to reject the pine trees or to communicate that rejection renders the defendant liable for payment of that portion of the shipment.

R.C. 1302.85(A) (UCC 2–711[1]) permits the defendant to recover so much of the price as has been paid when there has been a proper rejection. The defendant is therefore entitled to recover that portion of the $850 freight charges that are attributable to the willow oaks. As the freight charges are based more upon the size of the trees than their market value, the defendant is entitled to a refund of $35/46$ of the freight charges, or $646.74. The plaintiff, in turn, is entitled to payment for the pine trees in the amount of $341.

█ The defendant's obligation after rejection was to maintain the willow oaks with reasonable care at the plaintiff's disposition for a time sufficient to permit the plaintiff to remove them. R.C. 1302.61(B)(2) (UCC 2–602[2]). This the defendant did by continuing to water the trees. The defendant seeks recovery for the incidental costs associated with watering the trees, as well as those associated with unloading and heeling them in and disposing of them. R.C. 1302.89(A) (UCC 2–715[1]) permits the defendant to recover as damages any reasonable expense incidental to the plaintiff's breach. *Lanham v. Solar Am. of Cincinnati, Inc.* (1986), 28 Ohio App.3d 55, 28 OBR 67, 501 N.E.2d 1245. The evidence indicates that a crew of one foreman and two laborers took about four hours to unload and heel-in the shipment of trees. The foreman's wage rate was $10 per hour and the laborers' rate was $6 per hour. Again, defendant is entitled to recover that portion of the labor that was expended on the willow oaks, which is $35/46$ of $88, or $66.96.

While the defendant is entitled to recover the costs incurred in watering the willow oaks, there has been a substantial failure of proof as to the actual costs involved. There were about nine hundred trees in the holding yard and they were watered by a sprinkler that was moved every two hours from place to place. We cannot discern from the evidence how much labor was expended on the thirty-five willow oaks in question, and no evidence was presented regarding water usage.

The evidence indicates that it took defendant's crew about four hours to dispose of the trees, so the court finds that the labor costs amounted to $88. The evidence is insufficient, however, to determine the charge for the chipper that was used or the fees for hauling and dumping the balls in a landfill.

In summary, the court finds that there is $341 due the plaintiff for the Japanese Black Pines and that there is $801.70 due the defendant for a refund of the freight charges and compensation for the labor charges for unloading,

heeling-in and disposing of the trees. This leaves a net amount due the defendant of $460.70, for which judgment will be rendered.

*Judgment accordingly.*